IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

**STARSKY BOMER**

|  |  |
|---|---|
| § § § § § § § § § § § | Civ. No. _____ <br><br> May 10, 2020 |

**v.**

F.J. Garrido, Warden of the Federal Correctional
Institution at Beaumont, TX
And Michael Carvajal, Director of the
Federal Bureau of Prisons, in their official capacities

### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241 AND REQUEST FOR EMERGENCY ORDER OF ENLARGEMENT

### PRELIMINARY STATEMENT

The federal correctional facility at Beaumont Prison Camp is a minimum security federal correctional camp located in Beaumont, Texas. Texas now has over 37,000[1] cases of Covid-19 and is quickly becoming one of the states with the most cases nationwide.

As the virus continues to spread across our state, the risks posed by COVID-19 to people confined in prisons, working in prisons, and their respective communities are stark and alarming. For reasons beyond their control, people in jails and prisons cannot practice social distancing,

---

[1] *See* COVID-19 Case Count Dashboard – Texas Health and Human Service: Texas Department of Health Serv*ices*, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83

1

control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning or laundry, avoid high-touch surfaces, or sanitize their own environment. And those problems are no more evident than at FCI Beaumont, a prison complex consisting of a men's minimum security camp, as well as the USP, medium security, and low security prisons. As of today there have been 4 CO's that tested positive for this virus, staff members of the facility that were until recently free to interact with several other workers and objects throughout the premises (See Exhibit 1)[2].

Petitioner brings this action the warden of FCI Beaumont and the Director of the Federal Bureau of Prisons on behalf of himself in regards to the inhumane conditions now being forced upon Petitioner. Currently the conditions of Petitioner's confinement make him a high risk to spread the disease because of the difficulty social distancing while in federal prison. COVID-19 feeds specifically on these sort of unsafe, congregate conditions. Respondents are aware of the grave dangers posed by Covid-19 and have failed to implement measures to comply with their constitutional obligations to those in their custody. Because of their unlawful and unconstitutional confinement, Petitioner seeks emergency orders requiring a two-part response, the immediate transfer of the most medically vulnerable individuals to home confinement or other appropriate settings and immediate implementation for those who remain of the social distancing hygiene measures essential to lowering the risk of the disease and of death.

## PARTIES

1. Petitioner Starsky Bomer, BOP Register Number 14891-479, is a 47 year old male who is incarcerated at Beaumont Prison Camp. He was convicted after a federal jury trial and

---

[2] *See Martinez-Brooks, et. al. v. D. Easter, Warden of FCI Danbury, et. al.* (28 U.S.C. 2241 Writ of Habeas Corpus, filed April 4, 2020) (Much of the wording and formatting of this filing is drawn from this pleading, which is available online at www.nacdl.org)

sentenced to 10 years. The offense was a nonviolent crime of Medicare Fraud. Petitioner. Has an autoimmune disease which is an overactive/dysfunctional immune system. If left untreated can cause irreversible permanent join damage. This condition causes your immune system to attack healthy tissue by mistake. Petitioner outlines this condition in his attached statement further (See Exhibit 1). Due to the medication Petitioner takes to treat this disease, his specific immune system and health are much more vulnerable and high risk for contracting COVID-19 than other individuals of his age and situation. Petitioner also has respiratory disease that requires a CPAP machine and also makes him especially compromised in regards to contracting a virus (See Exhibit 1 and 2 for more information about Petitioner's condition and other details to support his request to be moved to at home confinement).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner seeks relief from being held in custody in violation of the Eighth Amendment to the U.S. Constitution.

3. In addition, the Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 (federal question) in the Petitioner's claim arise under the federal statute providing for habeus corpus, 28 U.S.C. § 2241, and under Article I, § 9, cl. 2 of the U.S.

4. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred and continue to occur in this district.

## CLASS ACTION ALLEGATIONS

5. Petitioner brings this representative habeas action pursuant to 28 U.S.C. § 2241

and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on his own behalf and on behalf of all persons similarly situated.

6. Petitioner seeks to represent a class consisting of all individuals currently in custody at FCI Beaumont or who will become in custody at FCI Beaumont during the course of the COVID-19 pandemic (the "Class").

7. Petitioner also seeks to represent a subclass (the "Subclass") consisting of all individuals in custody at FCI Beaumont or who will become in custody at FCI Beaumont during the course of the COVID-19 pandemic who are aged 50 or over and/or who have serious underlying medical conditions that put them at particular risk of serious harm or death from COVID-19, including but not limited to people with respiratory conditions such as chronic lung disease or asthma; people with heart disease or other heart conditions; people who are immunocompromised as a result of cancer, HIV/AIDS, or for any other immunodeficient condition; people with chronic liver or kidney disease, or renal failure (including hepatitis and dialysis patients); people with diabetes, epilepsy, hypertension, blood disorders (including sickle cell disease), or an inherited metabolic disorder; people who have had or are at risk of stroke; and people with any condition specifically identified by CDC, currently or in the future, as increasing their risk of contracting, having severe illness, and/or dying from COVID-19.

8. The members of the Class and Subclass are too numerous to be joined in one action, and their joinder is impracticable. Upon information and belief, the class exceeds 1,000 individuals.

9. Common questions of law and fact exist as to all Class and Subclass members and

predominate over questions that affect only the individual members. These common questions of fact and law include but are not limited to: (1) whether the conditions of confinement described

in this Petition amount to Constitutional violations; (2) what measures Respondents took in response to the COVID-19 crisis; (3) whether Respondents implemented an adequate emergency plan during the COVID-19 crisis; (4) whether Respondents' practices during the COVID-19 crisis exposed people at FCI Beaumont to a substantial risk of serious harm; (5) whether the Respondents knew of and disregarded a substantial risk of serious harm to the safety and health of the Class; and (6) what relief should be awarded to redress the harms threatened to members of the Class as a result of the conditions.

10. Absent class certification, individuals detained at FCI Beaumont during the COVID-19 pandemic would face a series of barriers in accessing the relief sought. FCI Beaumont has suspended visitation and FCI Beaumont prisoners have limited access to communication with the outside world, impeding their ability to obtain legal representation and to pursue remedies, including through litigation. A large portion of the Class and Subclass has limited educational backgrounds. And a significant percent of them suffer from physical or mental impairments.

## STATEMENT OF FACTS

### I. PETITIONER IS A MEMBER OF THE POPULATION CLASSIFIED AS HIGHLY VULNERABLE TO COVID-19

11. Petitioner, current detained at FCI Beaumont, is an individual who is exceptionally vulnerable to serious illness or death if infected by COVID-19[3].

---

[3] *See People who are at higher risk, Centers for Disease Control and Prevention: Coronavirus Disease 2019* (COVID-19) (May 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

12. Petitioner's condition and the treatment required by that condition increase his vulnerability to a disease like COVID-19, particularly because Petitioner's condition deals with the immune system, which is a vital tool in the body's fight against catching and surviving COVID-19. Individuals who are immunocompromised such as Petitioner have been identified by the Center for Disease Control as being at higher risk for severe illness[4].

13. Petitioner's medication he takes to treat his condition will need to be discontinued or he will need to seek alternate treatment because of the threat the medication has to his immune system and therefore causing greater risk of Petitioner contracting COVID-19 (See Exhibit 3).[5]

14. Petitioner has had zero infractions and was originally sentenced to ten years confinement on a non-violent crime (See Exhibit 1).

15. On April 18th, Petitioner was told he would be put on the high risk list and released to home confinement (See Exhibit 1).

16. However, on April 20th, Petitioner was informed he would not qualify for the medical high risk list because the BOP released new guidelines stating that you had to serve at least 50% of your sentence to be considered (See Exhibit 1 and 4).

17. Respondents are arbitrarily applying the 50% rule to Petitioners confinement or denial of his request for home confinement, even though the virus does not care about how much time an individual has done in prison. Petitioner is a nonviolent offender who has qualified for the at-home confinement because of his specific risk of attracting COVID-

---

[4] *See Id.*
[5] *See* International Psoriasis Statement on the Coronavirus (COVID-19) Outbreak (March 11, 2020) https://www.psoriasiscouncil.org/blog/Statement-on-COVID-19-and-Psoriasis.htm

19. Applying the 50% rule is arbitrary and recklessly disregards Petitioner's dire health circumstances (See Exhibit 1).

**II. THE LAYOUT, PROCEDURES, AND LACK OF MEDICAL RESOURCES AT THE BEAUMONT FACILITY GIVES RISE TO AN URGENT NEED FOR SOCIAL DISTANCING AND ADDITIONAL ACCOMODATION DURING THE SPREAD OF COVID-19**

18. The prison camp at FCI Beaumont has four dormitories and they are listed as GA-GD. Petitioner is housed in GB. All dorms house roughly 150 men. These dorms are open style dorms with cubicles that hold up to 3 men, and the cubes are roughly 8 feet by 10 feet. The same 150 men use 4 telephones, 4 computers, 10 sinks, 10 showers, 5 toilets, and one handicap toilet to share between them (See Exhibit 1).

19. One of the dorms, Dorm GA, was put on quarantine once an inmate showed symptoms of COVID-19. Even though the dorm was on lockdown and quarantine, inmates could still leave the dorm and go visit other dorms (See Exhibit 1).

20. Correctional Officers go in between the different dorms and also come in from visiting places outside when not working, and they do not wear protective gear or a mask the overwhelming majority of the time (See Exhibit 1).

**III. THE BEAUMONT FACILITY LACKS PROPER TESTING AND TREATMENT FOR THOSE SHOWING COVID SYMPTOMS**

21. As of today, four Correctional Officers that work at the Beaumont facility have tested positive for COVID-19 (see Exhibit 1).

22. There is no way to be certain who in the inmate population has COVID-19 because of the asymptomatic quality of the disease combined with the fact that the FCI Beaumont facility has little to no testing available for inmates (see Exhibit 1).

23. People who contract COVID-19 can deteriorate rapidly, even before a test result can be received. They need constant monitoring. Most people in the higher risk categories will require more advanced support: positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation. Such care requires specialized equipment in limited supply as well as an entire team of specialized care providers. FCI Beaumont does not have that specialized equipment available or specialized providers available (See Exhibit 1).

IV. **THE BEAUMONT FACILITY AND BOP HAVE FAILED TO IMPLEMENT THE TRAINING AND INTERVENTIONS NECESSARY TO PREVENT THE SPREAD OF COVID-19**

24. The staff at the Beaumont facility as well as the inmate population are unable to practice social distancing measures because of the confined space (See Exhibit 1).

25. There are not enough supplies and sinks available for the inmates and staff to wash their hands multiple times a day and also safely practice social distancing. Courts and experts have found that these confined spaces along with the lack of testing and other resources available to the federal prison facilities will most likely result in the spread of COVID-19 unless certain measures are taken quickly.[6]

26. Respondents' failures to respond appropriately to the coronavirus outbreak in FCI Beaumont has, likewise, endangered prison staff. In an "Imminent Danger Report" filed with the Occupational Safety and Health Administration ("OSHA") on March 31, 2020, the President of the Union that represents many BOP staff reported health and safety

---

[6] *See* "Sixth Circuit Affirms Order for the BOP to Start Releasing Vulnerable People from Elkton, Ohio Prison" (May 10, 2020). https://witnessla.com/sixth-circuit-affirms-order-for-the-bop-to-start-releasing-vulnerable-people-from-elkton-ohio-prison/

hazards across many BOP facilities – including FCI Beaumont – related to COVID-19, including:

a. Contrary to CDC guidelines, officials have directed staff throughout the BOP who have come into contact with, or been in close proximity to, individuals who show or have shown symptoms of COVID-19, to report to work and not self-quarantine for 14 days.

b. The BOP has violated CDC Guidelines by continuously moving prisoners by bus and/or airlift to various prison sites across the nation, including infected prisoners, prisoners suspected of being infected and prisoners who have been in close contact with or proximity to, infected prisoners or staff.

c. The BOP has failed to introduce workplace controls to mitigate exposure or further exposure to the virus, such as high efficiency air filters to minimize the airborne nature of the virus or otherwise improve ventilation;

d. The BOP has failed to minimize contact within recreation areas, education areas, counseling treatment rooms, resulting in prisoners and staff coming in dangerously close contact with each other; and

e. The BOP has failed to comply with OSHA Personal Protective Equipment Standards.

## CLAIM FOR RELIEF

**(Declaratory and Injunctive Relief for Violation of the Eighth Amendments)**

27. Petitioner realleges and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

28. Respondents are holding Petitioner and all putative class members in violation of the Constitution by detaining them in the face of significant threats to their health and safety without taking sufficient steps to prevent that harm.

29. Respondents' failure to provide adequate medical care in response to a widespread outbreak of a contagious disease constitutes deliberate indifference to the serious, known medical needs of detainees, thereby establishing a violation of the Eight Amendment of the United States Constitution.

30. Because of the conditions at FCI Beaumont, Petitioner is not able to take steps to protect himself – such as social distancing, using hand sanitizer, washing hands regularly, and disinfecting surroundings – and the government has not provided adequate protections. As COVID-19 begins to spread at FCI Beaumont in a matter of days, as experts predict, the already deplorable conditions at this facility will be exacerbated and the ability to protect oneself will become even worse.

31. Respondents' failure to adequately protect Petitioner from these punitive conditions, or release them from the conditions altogether, constitutes deliberate indifference to the serious known medical needs of Petitioner, and all members of the Class, thereby establishing a violation of the Eighth Amendment of the United States.

32. Respondents are aware of the medical needs of Petitioner and the rest of the population, as well as the pervasiveness of prisoners and staff exhibiting COVID-19 symptoms throughout the prison.

33. Respondents know of and are disregarding an excessive risk to health and safety.

34. Respondents failed to act with reasonable care to mitigate these risks.

35. Because Respondents failed to act to remedy Petitioner's degrading and inhuman conditions of confinement in violation of his Eighth Amendment rights, Petitioner seeks relief under this Writ of Habeas Corpus.

36. Because of the unlawful conduct of Respondents, Petitioner and the Class are threatened with imminent physical injury, pain and suffering, emotional distress, humiliation, and death.

37. Petitioner has no adequate remedy at law and will suffer irreparable harm unless the court acts immediately to grant the relief requested herein.

### THE NEED FOR ENLARGMENT AS A PROVISIONAL REMEDY

38. Federal District Courts have authority, when habeas actions are pending, to "enlarge" the custody of petitioner. Enlargement is not release. Rather, it is a provisional remedy that modifies custody by expanding the site at which it takes place, upon order of the court, from a particular prison to another setting; as requested here, to home confinement. The enlargement power stems from congress's authorization of federal judges under the habeas statutes to "summarily hear and determine the facts, and dispose of the matter as law and justice require" as well as the courts inherent powers. See 28 U.S.C. § 2243.

39. To qualify for the enlargement remedy, an individual must show "extraordinary circumstances" and that the underlying claim raises "substantial claims." *Mapp v. Reno* 241 F. 3d 221 (2d Cir. 2001).

40. Petitioner and the putative subclass members meet these requirements because of the extreme risk that COVID-19 poses, especially in light of Petitioner's medical condition and immunodeficiency, and also due to risks posed by the specific details of the confinement and conditions at FCI Beaumont (See Exhibit 1 and 2). If Petitioner and

putative subclass members remain incarcerated, there is a high risk that they will contract COVID-19 and, as a result, suffer severe illness or death. Immediate release to permit petitioner and putative Subclass members to serve their sentences on home confinement during the pendency of this action is this the only way to effectuate the eventual habeas remedy.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner and proposed class members respectfully request that this Court:

a. Certify the proposed Class and Subclass pursuant to Fed. R. Civ. Pro. 23(B)(1) and (B)(2);

b. Pursuant to 28 U.S.C. § 2243 and this Court's inherent powers, enlarge petitioner's and Subclass members pending disposition of the underlying petition;

c. Pursuant to 28 U.S.C. § 2243 and issued "fortwith," issue an Order to Show Cause requiring Respondents to identify within twenty-four (24) hours of the Court's order, and submit to the Court a list of , all subclass members, and requiring Respondents to answer as to why the habeas corpus petition and relief sought herein should not be granted.

d. Issue a Writ of Habeas Corpus pursuant to Fed. R. Civ. Pro. 65, enter a temporary restraining order, preliminary injunction, and permanent injunction, requiring Respondents to release from custody or to home confinement Petitioner and to provide adequate social distancing and healthcare for members who remain in custody.

e. Enter an order pursuant to 28 U.S.C. § 2201-2202, declaring Respondents' policies and practices regarding COVID-19 violate the Eighth Amendment to the United States Constitution;

    f. Appoint a special master pursuant to Fed R. Civ. Pro. 63 or an expert under Federal Rule of Evidence 706 to make recommendations to the Court regarding the number of incarcerated people that FCI Danbury can house consistent with CDC Guideline on best social distancing and hygiene practices to precent the spread of COVID-19.

    g. Issue a Writ of Habeas Corpus and/or pursuant to Fed. R. Civ. P. 65 enter an injunction requiring Respondents to:

1. Ensure that incarcerated individuals can remain six feet apart to practice social distancing in compliance with CDC Guidance;

2. Ensure that each incarcerated individual receives a free and adequate personal supply of: hand soap sufficient to permit frequent hand washing, paper towels, facial tissues, cleaning implements such as sponges or brushes, and disinfectant products that are effective against COVID-19;

3. Ensure that all individuals have access to hand sanitizer containing at least 60% alcohol;

4. Provide daily access to showers and clean laundry, including clean towels after each shower;

5. Require that all FCI Beaumont staff wear PPE Consistent with the CDC Guidance, including masks and gloves, when interacting with visitors incarcerated individuals or when touching surfaces in common areas;

6. Provide an anonymous mechanism for incarcerated individuals to report staff who violate these guidelines so that appropriate corrective action may be taken;

7. Take each incarcerated person's temperature daily (with a properly disinfected and accurate thermometer) to identify potential COVID-19 infecitons;

8. Assess each incarecerated individual daily through questioning to identify potential COVID-19 infections;

9. Conduct immediate testing for anyone displaying known symptoms of COVID-19;

10. Immediately provide clean masks for all individuals who display or report potential COVID-19 symptoms until they can be evaluated by a qualified medical professional or placed in non-punitive quarantine and ensure the masks are properly laundered with replacements as necessary;

11. Ensure that individuals identified as having been exposed to COVID-19 are properly quarantined in a non-punitive setting with continued access to showers, recreation, mental health services, reading materials, commissary, phone and video visitation with loved ones, communication with counsel, and personal property;

12. Clean and disinfect frequently touched surfaces with disinfectant products effective against the virus that causes COVID-19 (at the manufacturer's recommended concentration), as well as surfaces in common areas, every two hours during waking hours, and at least once during the night.

13. Ensure incarcerated people are provided quidance on how to protect themselves from COVID-19 and reduce COVID-19 transmission.

14. Assure incarcerated people are told that they will not be retaliated against for reporting COVID-19 symptoms.

15. Respond to all emergency (as defined by the medical community) requests for medical attention within an hour.

16. Provide incarcerated individuals with sufficient effective cleaning supplies free of charge so that they may clean frequently touched items such as phones before use.

17. Provide frequent communication to all incarcerated individuals regarding COVID-19, measures taken to reduce the risk of infection, best practices for incarcerated people to avoid infection and any changes in policies or practices;

18. Craft a mechanism to ensure compliance through the appointment of an independent monitor with medical expertise to ensure compliance with these conditions, and provide the monitor with unfettered access to medical units, confidential communication with detained individuals in and out of quarantine, and surveillance video of public areas of the facilities;

h. Retain jurisdiction over this case until Defendants/Respondents have fully complied with the orders of this Court, and there is a reasonable assurance that they will continue to comply in the future absent continuing jurisdiction;

i. Award appropriate attorneys' fees; and

j. Grant such further relief as the Court deems proper.

Respectfully Submitted,

_____
JOSHUA RICE
Rice Law Office – Austin
100 Congress Ave. Suite 2000
512.541.8251 / 979.248.3021
josh@ricelawoffice.com

*Counsel for Petitioner*

EXHIBIT LIST

EXHIBIT 1 – DECLARATION OF STARSKY BOMER

EXHIBIT 2 – STATEMENT OF FREDERICK FLOYDD

EXHIBIT 3 – MEDICAL RECORDS AND INFORMATION PERTAINING TO BOMER

EXHIBIT 4 – COMPASSIONATE RELEASE DENIAL FROM WARDEN GARRIDO